COHEN, J.
Wendy Betts appeals the trial court’s order denying her renewed motion for the *1081 appointment of an arbitrator capable of fulfilling this court’s mandate as part of her plenary appeal of the lawsuit’s voluntary dismissal with prejudice. We reverse and remand for further proceedings in order to enforce this court’s mandate.
Appellees preliminarily dispute this court’s jurisdiction and alternatively contend that the law of the case bars consideration of the appointment of a substitute arbitrator. This court has jurisdiction over the trial court’s nonfinal order denying the appointment of a substitute arbitrator on plenary appeal following entry of the final judgment. See Dreggors v. Employers Ins. of Wausau, 16 So.3d 309, 310 (Fla. 5th DCA 2009) (Griffin, J., concurring). The law of the case doctrine is inapplicable because the issue Appellant raises has never been considered and decided in a prior appeal involving this case. See Bloco, Inc. v. Porterfield Oil Co., 990 So.2d 578, 581 (Fla. 2d DCA 2008). Earlier appeals have considered various aspects of the arbitrability of the parties’ dispute, but not this issue.
This is the parties’ fourth appearance before this court since Appellant filed suit in 1999 challenging the legality of payday cash advance loans. Eight years were spent litigating whether Appellant was bound by the arbitration agreement she signed. Once that question was answered affirmatively and, on remand from the Florida Supreme Court,[1] this court in FastFunding The Company, Inc. v. Betts, 951 So.2d 116, 116 (Fla. 5th DCA 2007), ordered:
Under [Buckeye Check Cashing, Inc. v.] Cardegna, [546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)], the arbitrator must determine whether the contract at issue is illegal (as usurious) under Florida law. Additionally, the arbitrator must determine whether, under Florida law, the arbitration may proceed as a class action. See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414[] (2003).
Pursuant to the mandate, Appellant filed her class action complaint with the National Arbitration Forum (“NAF”), the arbitral forum designated under the agreement for loans from FastFunding The Company, Inc. (“FastFunding”). The agreement also provided that any claim or dispute would be resolved under NAF’s Code of Procedure (“Code”). The Code contains class arbitration rules and states it shall be interpreted in conformity with the Federal Arbitration Act (“FAA”).
After NAF reviewed Appellant’s class action complaint, it acknowledged Appellant’s request to certify a class under Code Rule 18, but requested she comply with Code Rule 19’s requirements: submitting all parties’ agreement to the class members’ joinder, all putative class members’ names, as well as copies of their arbitration agreements. NAF demanded compliance in twenty days in order to proceed with arbitration.
As part of Appellant’s claim supplement, she pointed out the quandary created by NAF’s rules that required her to name putative class members and supply copies of their arbitration agreements when all such pertinent data was within FastFund-ing’s exclusive possession. Ultimately, NAF accepted only Appellant’s claim, effectively denying any putative class claims of other consumers harmed by Appellees’ conduct. In response, Appellant withdrew her demand for arbitration with NAF and requested dismissal of her claim in arbitration against Appellees.
Contending that NAF was unwilling and unable to follow this court’s mandate and citing the lack of any contractual provision for an alternative arbitral forum, Appellant *1082 sought to lift the trial court’s stay and renewed her motion for the appointment of an alternative arbitrator capable of fulfilling this court’s mandate. Taking the stand that NAF’s opt-in procedure for class actions was unconscionable under Florida law, Appellant asserted that NAF was incapable of complying with this court’s mandate. In support, two of Appellant’s attorneys filed affidavits describing the abusive system they faced in attempting to arbitrate claims with NAF in this, and other lawsuits. Despite Appellant’s protestations regarding the Code’s class rules and difficulties encountered in pursuing class arbitration with NAF, she elected to voluntarily dismiss her claim before an arbitrator was appointed and before discovery of putative class members. At the hearing, the trial court denied relief and, pursuant to Appellant’s request, dismissed the lawsuit with prejudice.
The crux of this appeal concerns whether and how the class arbitration will proceed. To complicate matters, both parties acknowledge that less than two months after the appeal was filed, NAF ceased arbitrating consumer complaints.
This court’s mandate directing arbitration was not followed. “When an appellate court issues a mandate, compliance with the mandate is purely a ministerial act.” Formor v. State, 923 So.2d 563, 564 (Fla. 5th DCA 2006). “The circuit court does not have the authority to modify, nullify, or evade that mandate.” Id. Affirming the dismissal with prejudice of Appellant’s lawsuit would preclude any determination on the merits even though Code Rule 40F allows the first voluntary dismissal of a claim to be without prejudice and permits the claim to be refiled.
The FAA and NAF’s Code of Procedure permit arbitrators to decide whether class actions may be arbitrated under a particular contractual provision. See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451-52, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). Interpretation of arbitration rules are for the arbitrator to decide. Della Penna v. Zabawa, 931 So.2d 155, 162 (Fla. 5th DCA 2006). “Both federal and Florida public policy favor resolving disputes through arbitration when the parties have agreed to do so.” Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 262 (Fla. 2d DCA 2004) (citations omitted). Thus, we must construe the contract in a way that gives a reasonable meaning to all terms, rather than in a way that will render part of the contract of no effect. Id. The presence of a severability clause in NAF’s procedural rules permits the arbitrator to sever any offending provision without affecting the parties’ agreement to arbitrate. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005).
It is premature for this court to weigh in on the legality of the Code’s class rules and other issues raised by the parties. We agree with Appellees that there is nothing for this court to review until an arbitrator reaches a decision on the mandate. Accordingly, we outline steps the trial court and arbitrator should follow in going forward with this lawsuit.
The trial court must first evaluate the consequences of NAF’s unavailability. The Eleventh Circuit addressed the question in Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1222 (11th Cir.2000) (citations omitted):
The unavailability of the NAF does not destroy the arbitration clause.... Where the chosen forum is unavailable, ... § 5 [of the FAA] applies and a substitute arbitrator may be named. Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an “ancillary logistical concern” *1083 will the failure of the chosen forum preclude arbitration.
Absent any evidence that the choice of NAF as the arbitral forum was an integral part of the agreement to arbitrate, this matter will proceed in arbitration with an arbitrator the trial court selects pursuant to 9 U.S.C. § 5. See New Port Richey Med. Investors, LLC v. Stern, 14 So.3d 1084, 1087 (Fla. 2d DCA 2009). The FAA provides that when there is a lapse in naming an arbitrator, “upon application of either party to the controversy the court shall designate and appoint an arbitrator ... who shall act under the said agreement with the same force and effect as if he ... had been specifically named therein....” 9 U.S.C. § 5.
If the trial court determines NAF’s availability was not integral to the agreement to arbitrate, then it must appoint a substitute arbitrator to make the determinations this court mandated: whether, under Florida law, the contract at issue is illegal (as usurious) and whether the arbitration may proceed as a class action. Appellant argues that the Code’s opt-in class rule is unconscionable under Florida law which utilizes an opt-out procedure under rule 1.220. Courts have held that “[u]nder Florida law, a consumer contract that prohibits class arbitration is unconscionable because it ‘precluded] the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone.’ ” Rollins, Inc. v. Garrett, 176 Fed.Appx. 968, 968-69 (11th Cir.2006), citing Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla. 1st DCA 1999).
More recently, the Fourth District in McKenzie v. Betts, 55 So.3d 615 (Fla. 4th DCA 2011), affirmed the denial of a payday lender’s motion to compel arbitration because the arbitration agreement’s class action waiver violated Florida public policy. In analyzing the issue, the Fourth District recognized the tension between the public policies generally favoring the enforcement of arbitration agreements and those underlying remedial statutes like the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”) and the Florida Civil Remedies for Criminal Practices Act, under which Appellant also brought claims in the present case. See id. at 623-628. The Fourth District concluded that the inability to bring a class action suit against the lender would eviscerate the remedial purposes of the relied-upon statutes and that it was “[o]nly with the availability of class representation would consumers’ rights in these payday loan transactions be vindicated.” Id. at 623. Further, the court concluded that the class action waiver purported to prevent a borrower from joining the government initiated enforcement action permitted under FDUTPA.
This case is, in part, distinguishable because arbitration has already been ordered and the Code includes class action rules. The question remains, as mandated, whether, under Florida law, the arbitration may proceed as a class action. How McKenzie’s reasoning, applies to the instant case and whether the Code’s class action rules are consistent with Florida’s public policy are issues for the arbitrator. We simply note that in the absence of contrary precedent from either the supreme court or this court, the arbitrator, like the trial court, is bound to follow decisions of other district courts of appeal that are on point. See id.; Dawkins, Inc. v. Huff, 836 So.2d 1062, 1064 (Fla. 5th DCA 2003).
In sum, we reverse the trial court’s dismissal with prejudice of Appellant’s lawsuit and remand for the trial court to evaluate the appointment of an arbitral forum pursuant to 9 U.S.C. § 5. Any arbitrator so appointed shall consider the mandate from Betts, 951 So.2d 116.
*1084 REVERSED and REMANDED for further proceedings.
SAWAYA and LAWSON, JJ., concur.

. Betts v. FastFunding The Company, Inc., 950 So.2d 379 (Fla.2006).